(October 30, 1923.)

BERTHA BOWMAN, Respondent, v. McGOLDRICK LUMBER COMPANY, a Corporation, Appellant.

[219 Pac. 1063.]

RAILROAD RIGHT OF WAY—BASE OR QUALIFIED FEE—LICENSEE—NAVI-
    GABLE BODY OF WATER—RIPARIAN RIGHTS.

1. A right of way obtained by a railroad company under the act of Congress March 2, 1899, conveys to such company a base or qualified fee to the land in such right of way, and gives to such railroad company the exclusive use and possession of such right of way so long as it is used by the railroad company for the purposes for which it was granted.

2.   In case a railroad right of way bordering a navigable body of water is a base or qualified fee, giving the railroad company the exclusive right of possession and use, a mere license to cross such right of way to the water bordering such right of way, revocable at any time on thirty days' notice from the railroad company, does not confer upon the licensee any riparian rights as to such navigable body of water.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. W. F. McNaughton, Judge.

Action for damages caused by obstructing plaintiff's passage between her home and Lake Coeur d'Alene. Judgment for plaintiff. *Reversed.*

Randall & Danskin and Robt. H. Elder, for Appellant.

On navigable streams in this state riparian rights do not extend beyond the high-water mark. (*Northern Pac. Ry. Co. v. Hirzel,* 29 Ida. 438, 161 Pac. 854; *Lownsdale v. Grays Harbor Boom Co.,* 54 Wash. 542, 103 Pac. 833; *Port of Seattle v. Oregon & Wash. Ry. Co.,* 255 U. S. 56, 41 Sup. Ct. 237, 65 L. ed. 265.)

Plaintiff having no riparian rights and not being cut off entirely from egress and ingress to her home must show that she suffered some special injury different from that of the public in general.   (27 R. C. L. 1346, sec. 258.)

"One having no riparian rights cannot personally complain of an obstruction to navigation in front of his land." (*Port of Seattle v. Oregon & Wash. Ry. Co., supra; Lownsdale v. Grays Harbor Boom Co., supra; Potter v. Ind. & L. M. Ry. Co.,* 95 Mich. 389, 54 N. W. 956; *Eldridge v. Cowell,* 4 Cal. 80.)

Publisher's Note.

2.   Nature of riparian rights, and lands to which they attach, see notes in 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026.

No damages can be allowed for a use to which the land was never put. (*Brightman v. Fairhaven,* 7 Gray (Mass.), 271; *Potter v. Ind. & L. M. Ry. Co., supra.*)

W. B. McFarland, for Respondent.

The location of the right of way by the railroad company did not give to the company any riparian rights or invest it with riparian ownership, but it held and holds the right of way only for the purposes served by the construction and operation of railroad tracks. The riparian rights and ownership followed the land and were acquired by respondent's grantor upon issuance of patent thereto. (*In re City of Buffalo,* 206 N. Y. 319, 99 N. E. 850; *New York Cent. & H. R. R. Co. v. Aldridge,* 135 N. Y. 83, 32 N. E. 50, 17 L. R. A. 516.)

FEATHERSTONE, Dist. Judge.—This is an appeal from the judgment of the district court of Kootenai county, Idaho, the undisputed facts of the case being that for at least four years before the action was instituted, Bertha Bowman, respondent, was the owner of the northwest quarter of the southeast quarter and lots 2, 3 and 4, section 30, township 48, range 4 west, Boise Meridian.

Patent for the above-described land was issued to respondent's predecessor in interest on February 19, 1913, and contained the following reservation: "The lots, 2, 3 and 4, of section 30, of the lands above described are subject to all rights under an application by the Lake Creek and Coeur d'Alene Railroad Company, approved October 16, 1909, under the act of March 2nd, 1899, being an application for a right of way." It is undisputed that at the time respondent's grantor received said patent to the premises the Lake Creek and Coeur d'Alene Railroad Company, the predecessor in interest of the Oregon-Washington Railroad and Navigation Company, had definitely located a right of way over said premises under and by virtue of an act of Congress, granting right of way to railroads and lands for station purposes to railroads through Indian reservations

(3 Fed. Stats. Ann. 511, 30 Stats. at Large 990, U. S. Comp. Stats. 4181–4188), and had constructed and has at all times since and now is operating a railroad across said lots. This statute is similar to the various statutes granting rights of way to railroads across public lands and very similar to one of said statutes, that of March 3, 1875, 18 U. S. Stats. at Large, 482, U. S. Comp. Stats. 4221–4226, which was passed upon by this court in the case of *Oregon Short Line R. R. Co. v. Stalker,* 14 Ida. 371, 390, 94 Pac. 59, where the court speaking of *M. K. & T. Ry. Co. v. Roberts,* 152 U. S. 114, 14 Sup. Ct. 496, 38 L. ed. 377, said: ''There it is held that such grants have the 'attributes of the fee, perpetuity and exclusive use and possession.' There is nothing in the contention of counsel that the appellant who holds the legal title had the right to the use and possession of said station ground until it is needed by the company, as the company, under the authorities, has the exclusive right to the use, possession and occupation of the ground, whether its buildings and improvements cover it all or not.''

Under said decision it is apparent that the nature of the grant made in this case as to the right of way and station grounds is a base, qualified or limited fee and is more than a mere easement, giving the exclusive possession and right of use of the land for the purposes contemplated by the law, a reversionary interest remaining in the United States to be conveyed by it to the person to whom the land may be patented whose rights will be subject to those of the grantee of the right of way and station grounds. It also appears from the undisputed evidence that by reason of the aforesaid grant, the railroad definitely located a right of way 200 feet in width along the shore line of the said lots 2, 3 and 4, and that such right of way extended down to the water's edge practically the entire distance, and that said lands fronted on the lake, it being shown that at the place where the county road came down to the water's edge a very small portion of said lands lies between the right of way of the railroad company and the lake, but respondent does not complain of being deprived of ingress to and egress from that

portion of the land in controversy. She states in her testimony that this landing was too far from her house to be as convenient as what she terms her "private landing," which was on the right of way of the railroad company and on the land leased by the company to the appellant herein.

Respondent's complaint consisted of two causes of action. Her first was based upon the allegations that appellant for four years had used her shore line for the storage of logs and booms and that the reasonable rental value of her grounds for such purposes was at least two thousand dollars ($2,000). In her second cause of action respondent sought to recover the sum of five hundred dollars ($500), in which amount she alleged she had been damaged on account of being deprived of ingress to and egress from her premises by the logging operations of appellant.

After respondent's evidence had been introduced, upon appellant's motion for nonsuit consideration of respondent's first cause of action was taken from the jury and the case finally went to the jury solely on the question of the privation of the right of ingress and egress. The jury returned a verdict for the respondent in the sum of $500, and judgment upon the verdict in that amount was entered by the court.

Under date of June 1, 1912, the Oregon-Washington Railroad Navigation Company gave the appellant, the McGoldrick Lumber Company, a permit to occupy station grounds, which permit covered the land lying between the track of the railroad company and the lake along the boundary line of said lots 2, 3 and 4, hereinbefore mentioned.

This permit expired by the terms thereof on December 31, 1916, and on January 2, 1917, a similar permit for the same ground was granted by the railroad company to the appellant, and it is shown by the evidence that the appellant company has occupied and still occupies the said land with its booms and loading works and that it occupied and used the said lands even prior to the granting of the first permit. On November 1, 1914, the Oregon-Washington Railroad and Navigation Company gave to William Bowman, the husband

of respondent, a permit to construct and maintain a private crossing for farm purposes only and for the sole benefit of the property of the said William Bowman "over and across its right of way and tracks at a point on said premises 210 feet westerly of the west head block of side-track at Amwaco, Idaho."

This permit was admitted in evidence over the objection of defendant's attorney that the permit did not run to the plaintiff and did not describe the land owned by the plaintiff, the land being described as "Range 5, West Boise Meridian," instead of "Range 4, West Boise Meridian."

The admission of this permit granted to William Bowman for a farm crossing was error. The permit was a mere license which by its terms was subject to revocation at any time on thirty days' notice from the railroad company and gave Mrs. Bowman no interest whatever in the land. Since riparian rights depend upon ownership of land which is contiguous to water (Gould on Waters, sec. 148; Farnham on Waters and Water Rights, sec. 63, p. 282; *Illinois Central Ry. Co. v. People of the State of Illinois,* 146 U. S. 387, 13 Sup. Ct. 110, 36 L. ed. 1018, 1040), even if this license had been granted to her instead of William Bowman, it would give her no riparian rights and was inadmissible to sustain her claim of such rights.

The contention of respondent is that for the four years last past defendant, in its logging operations on Windy Bay, which is an arm of Lake Coeur d'Alene, has wilfully, wrongfully and against plaintiff's will and without her consent, maintained boom sticks and log booms along and across the shore line of plaintiff's land and prevented plaintiff from having ingress to and egress from her premises at the point where the farm crossing given to William Bowman crossed the right of way of the Oregon-Washington Railroad and Navigation Company to the shore of the lake to what is termed her "private landing."

The question then arises as to the rights, if any, of the respondent at this point. In the case of *Northern Pacific Ry. Co. v. Hirzel,* 29 Ida. 438, 161 Pac. 854, this court held

that the state of Idaho holds the title to the beds of all navigable streams of the state for the benefit of the public, and the riparian rights of the owner extend only to the high-water mark, and, it being undisputed that the right of way of the railroad company at the point in question extended down to the high-water mark of the lake, the respondent having failed to show that she had any riparian rights on the lake except at the point where the county road came down to the shore line, and having made no complaint that the defendant interfered with her ingress and egress at that point, but only at the point where the farm crossing of William Bowman crossed the right of way from her land to the lake shore, under the circumstances we fail to see how the respondent has been damaged by the acts of the appellant at this point where she had no riparian rights.

The respondent testified to no damages that she had suffered, but merely stated that she had used her place as a home and that the blocking of her private landing had caused her delay and inconvenience in getting in and out subsequent to May 5, 1921, the date of the bringing of the action. Her proof of damages consisted of the testimony of Ceasar Masini, which was to the effect that for summer resort purposes the dwelling-house of plaintiff was worth from $30 to $35 per month for four or five months of the year and that, if access to the lake was blocked by logs and boom sticks most of the time, it would spoil the value of this place about 50%, but as there was no evidence or inference to be drawn from the testimony to sustain the idea that Mrs. Bowman's place had been, could be or ever would be used for summer resort purposes, no damages can be allowed for a use to which the land is not now, and is not likely to be put.

In the case of *Potter v. Indiana & L. M. Ry. Co.*, 95 Mich. 389, 54 N. W., at p. 956, passing on this question, the court said:

"Plaintiff has shown no special damages, even if the old bayou, which reaches his land, were a navigable stream. He alleges in his declaration that his lands were suitable dock-

age for warehousing, manufacturing lumber, and coal-yards, and such purposes as are in connection with shipping and freighting business.  It is evident that they were useful for no other purpose.  Whether there will ever be a demand for them for such purposes is problematic.  His damages, therefore, are purely speculative.''

We therefore conclude that the trial court erred in denying defendant's motion and application for nonsuit after all the evidence had been submitted and after both sides had rested.  The judgment is therefore reversed.  Costs awarded to appellant.

McCarthy, Dunn and Wm. E. Lee, JJ., concur.